## Case No. 11,827.

### RIGGS v. The JOHN RICHARDS.

[Newb. 73.] [1]

District Court, D. Michigan. 1856. [2]

MARITIME LIENS—BY STATE LAW—JURISDICTION IN ADMIRALTY—PROCEEDING IN REM—STATE LAW—CONSTITUTIONAL LAW.

1. The proceedings before a circuit court commissioner of the state of Michigan, under the "boat and vessel" law of said state, cannot be considered as a proceeding in rem.

2. The Michigan statute for the collection of claims against ships, boats and vessels, and declaring lien thereon, for supplies and materials, makes no equal provision for claims arising in other states.

3. A state may by law create a maritime lien, unknown to the general maritime law, and may provide legal tribunals, and a mode of proceedings for the enforcement of such liens, other than proceedings in rem.

4. Proceedings in rem are peculiar to admiralty courts. They are international and not municipal.

5. Whenever municipal law appropriates the remedy in rem against vessels, it comes in direct conflict with the second section of the third article of the constitution of the United States.

6. State legislatures have no power to divest a lien existing in admiralty.

7. The possession of the vessel by the sheriff under state process, did not divest the lien in admiralty, or affect the process in the hands of the marshal.

In admiralty. This is a suit to recover possession, and determine the title of the vessel.

Libelant's title is under a sale, by virtue of the decree of the United States district court, in admiralty. Respondent's title is under a bill of sale, from the sheriff of Wayne county, by virtue of proceedings under the boat and vessel law. The vessel was originally seized September 8, 1855, in this court, under a libel filed by Joseph Riggs, a citizen of Michigan. Under this libel Brayman, of Ohio, inter-

[1] [Reported by John S. Newberry, Esq.]
[2] [Affirmed in Case No. 7,361.]

vened. No appearance was entered, and the vessel was condemned, sold and bid in by Riggs, December 24th, 12 o'clock, noon. In the state court the vessel had been seized August 29, 1855, by the sheriff of Wayne county, under the boat and vessel law; he had taken her into a private dock, stripped her, and put her in charge of the owner of the dock. On this seizure proceedings were had, and the vessel sold and bid in by D. O'Callaghan, the claimant, December 24th, 10 a. m.

S. Towle, for respondent.

I. The proceedings in the state court were in all respects regular and legal, and in conformity with the statutes. See Rev. St. Mich. 1846, p. 537; St. 1850, p. 206. The only question raised by the libelant was, whether the sheriff had sufficient possession to hold against a subsequent seizure. A sheriff is not required to keep actual manual possession. Hemmenway v. Wheeler, 14 Pick. 408; Bicknell v. Trickey, 34 Me. 273; Mills v. Camp, 14 Conn. 219; Rives v. Porter, 7 Ired. 74; Denny v. Warren, 16 Mass. 420; Gordon v. Jenney, Id. 465; Ashmun v. Williams, 8 Pick. 402. The fact that the vessel was taken from the possession of the owners, was sufficient notice to the marshal of the levy. Berry v. Smith [Case No. 1,359]. But notice is not necessary. Tomlinson v. Collins, 20 Conn. 364; Hemmenway v. Wheeler, 14 Pick. 410; 6 Bac. Abr. 176.

II. The proceedings before the state tribunal, even if irregular, were sufficient to give the respondent (a purchaser) good title. Elliott v. Pearsall, 1 Pet. [26 U. S.] 340; Sims v. Slocum, 3 Cranch [7 U. S.] 300, 307.

III. The seizure by the sheriff was a seizure of the res, under a proceeding in rem, upon a process co-ordinate, if not superior, to that issued from the admiralty court. (1) The statute of Michigan creates a lien. Watkins v. Atkinson, 2 Mich. 151; Bidwell v. Whitaker, 1 Mich. 469; Lawson v. Higgins, Id. 225; Turner v. Lewis, 2 Mich. 350. The decisions of a state court will be followed by the United States courts in the interpretation of a local law. Smith v. Kernochen, 7 How. [48 U. S.] 1, 198; Springer v. Foster [Case No. 13,265; Neal v. Green [Id. 10,065]; Bank of the United States v. Longworth [Id. 923].

IV. The schooner having been seized by the state officer in rem, to enforce a lien given by the state law, the marshal had no power to take it from the custody of the sheriff. The Robert Fulton [Case No. 11,890]; Davis v. New Brig [Id. 3,643]; Pulliam v. Osborn, 17 How. [58 U. S.] 471; Taylor v. The Royal Saxon [Case No. 13,803].

V. The Michigan statute is not repugnant to that provision of the constitution of the United States, which gives the federal courts cognizance of all cases of admiralty and maritime jurisdiction. (1) Cases of admiralty jurisdiction, are to be governed by the general admiralty law, which is a branch of the law of nations, not the local law of any particular

country. See Fland. Adm. §§ 1, 3; 3 Story, Const. 1664–1667, and notes, 1748; 1 Kent, Comm. 377, note; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, opinion of Nelson, J., page 392. Whereas the statute in question is a mere local law, operating only within the state, and between its citizens, involving no matters of national nature. See 3 Story, Const. 1770. Any state, by virtue of its inherent sovereignty, may pass and enforce such a law, to operate upon its own citizens. Riggs, a citizen of Michigan, is bound by that law; he comes into this court claiming under it, he must take it cum onere. (2) State laws similar to this, existed in most of the states previous to the adoption of the constitution, and have ever been sustained. See Story, Comm. Const. 1748. (3) These local laws have been recognized and sanctioned by the United States courts. The Chusan [Case No. 2,717]; Davis v. New Brig [supra]; Pulliam v. Osborn, 17 How. [58 U. S.] 475; The Robert Fulton [supra]; 3 Story, Const. §§ 1665, 1666, and note 3; 1 Kent, Comm. 377, and note; Hobart v. Drogan, 10 Pet. [35 U. S.] 108, 120; The Taranto [Case No. 13,751], Sprague, J. (4) Congress has recognized expressly the existence and legality of these laws. Act of 26th of February, 1845 [5 Stat. 726]. See Const. p. 4. (5) The courts of Ohio decided as we contend. Thompson v. The Morton (Warden) 2 Ohio St. 26, 28, 29; Keating v. Spink, 3 Ohio St. 105, 116, 117. (6) This is a matter of great delicacy, and no state law should without strong reason, be declared unconstitutional. Fletcher v. Peck, 6 Cranch [10 U. S.] 87, 128.

VI. We do not claim that the Michigan statute has any force beyond the limits of the state, or that it is binding upon foreigners. The question which has been so much mooted, whether a sale under this statute divests the lien of foreigners, does not arise here. Riggs, the original owners of the schooner Ladue and O'Callaghan, are all citizens of Michigan.

A. Russell, for libelant, in reply.

I. It is incompetent, in this collateral proceeding, to impeach the decree of the district court in the first suit, and the evidence offered by respondent is inadmissible. See, as to nature of proceedings in rem, Kennedy v. Georgia State Bank, 8 How. [49 U. S.] 644; 2 Am. Lead. Cas. 564–568; Story, Confl. Laws, § 592; 9 Ga. 244, 247.

II. The acquiescence of the creditors pursuing their remedy in the state courts, without interposing any claim pending the proceedings in the district court, is a waiver and relinquishment of their acquired rights. Conk. Adm. 548; George v. Skeates, 19 Ala. 741; The Robert Fulton [Case No. 11,890].

III. The admiralty acquired complete jurisdiction by the seizure made by the marshal, the vessel not being in the custody of the sheriff at the time. The Ann, 9 Cranch [13 U. S.] 289; Josefa Segunda, 10 Wheat. [23 U. S.] 312; Rose v. Himely, 4 Cranch [8 U.

S.] 214; Hudson v. Questier, Id. 293. Continued possession is necessary. Bridge v. Wyman, 14 Mass. 195; 1 U. S. Dig. 313; Conk. Adm. 494; Duncklee v. Fales, 5 N. H. 527; Bagley v. White, 4 Pick. 395; Burrough v. Wright, 19 Vt. 510; The Bolina, Case No. 1,608.

IV. Granting that the state court acquired and retained jurisdiction and possession of the res, it is not, therefore, withdrawn from the jurisdiction of the United States admiralty. The marshal, under admiralty process, could remove it from the custody of the sheriff. Greenough v. Walker, 5 Mass. 215; Watson v. Todd, Id. 274; Drinkwater v. Spartan [Case No. 4,085]; Conk. Adm. 407 et seq.; The Taranto [supra]; Certain Logs of Mahogany [Case No. 2,559]; The Flora, 1 Hagg. Adm. 298; Conk. Adm. Prac. 553; Taylor v. The Roy Saxon [Case No. 13,803]; Harris v. Dennie, 3 Pet. [28 U. S.] 292; U. S. v. Bags of Coffee, 8 Cranch [12 U. S.] 398; The Florenzo [Case No. 4,886].

V. Proceedings under the Michigan statute (chapter 122) are not in rem. If it was, all the world would be bound. Smith, Lead. Cas. 536. But a foreign lienholder cannot proceed under it. Bidwell v. Whitaker. Mann. (Mich.) 469. All the world are parties to a proceeding in rem, and the decree concludes all outstanding interests, because all are represented. But in the state court all are not represented. Wight v. Maxwell (opinion of Judge Whipple, Sup. Ct. Mich. 1855) [4 Mich. 45]. Reporter's note to 20 Ohio, 54, gives a history of legislation and decisions in Ohio. A judgment under the Ohio law not a bar to a suit in admiralty. The Globe [Case No. 5,484]; Ben. Adm. §§ 364, 365, 434; The May, 9 Cranch [13 U. S.] 144; The Mary Anne [Case No. 9,195]; Bradstreet v. Neptune Ins. Co. [Id. 1,793]; The Sea Bird v. Beehler, 12 Mo. 569; 13 Wend. 607; 12 Mass. 291–295; Smith v. The Eastern Railroad [Case No. 13,039]; Harris v. Henrietta [Id. 6,121]; U. S. v. 1960 Bags of Coffee, 8 Cranch [12 U. S.] 398. A judgment, even of the state court, would be no bar. 2 Am. Lead. Cas. 720; D'Arcy v. Ketchum, 11 How. [52 U. S.] 165; McElmoyle v. Cohen, 13 Pet. [38 U. S.] 312; Ewers v. Coffin, 1 Cush. 24.

VI. If the Michigan statute authorizes a proceeding in rem, it is so far unconstitutional and void: (1) As impairing the obligations of contracts. Bronson v. Kenzie, 1 How. [42 U. S.] 311; McCraken v. Howard, 2 How. [43 U. S.] 608; The Chusan [Case No. 2,717]. (2) Because it attempts to confer upon a state court a jurisdiction appropriated by the United States courts and laws to the federal courts. Waring v. Clarke, 5 How. [46 U. S.] 441, New Jersey Steam Nav. Co, v. Merchants' Bank, 6 How. [47 U. S.] 344 (overruling The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, and The Orleans, 11 Pet. [36 U. S.] 175), and The General Chief, 12 How. [53 U. S.] 443, settle the doctrine that public navigability is the test of jurisdiction. See,

also, U. S. v. New Bedford Bridge [Case No.
15.867]; 12 Conn. 7. As to exclusive regula-
tion of commerce, see Halderman v. Beckwith
[Case No. 5,907]; Raymond v. The Ellen
Stewart [Id. 11,594]; Campbell v. Emerson
[Id. 2,357]; Rogers v. Cincinnati [Id. 12,008];
Madison Papers, 91–105, vol. 2, 743, 744;
Chrisholm v. Georgia, 2 Dall. [2 U. S.] 419.
As to constitutionality of these state laws,
see Globe Case, ubi supra; Webster v. The
Andes, 3 West. Law J. (N. S.) 41; The Ve-
locity [Case No. 16,911]; 1 Kent, Comm. vol.
VII. 412, 413, and notes; Id. 403, note 1;
Story, Const. §§ 1663–1675; Federalist. No.
80; Conk. Adm. Prac. 147, 180; De Lovio v.
Boit [Case No. 3,776]; Davis v. New Brig [Id.
3,643]; As to saving common law remedy.
The Wave v. Hyer [Id. 17,300]; Martin v.
Hunter, 1 Wheat. [14 U. S.] 337; New Jersey
Steam Nav. Co. v. Merchants' Bank, 6 How.
[46 U. S.] 390; The Genesee Chief v. Fitz-
hugh, 12 How. [53 U. S.] 459.

Walkers & Russell, for libelant.
Towle, Hunt & Newberry, for respondent.

WILKINS, District Judge. The libel in
this case seeks to regain the possession of
the vessel, and sets forth a title under a bill
of sale from the marshal of this district, dat-
ed the 24th of December, 1855. The vessel
was originally libeled in this court by one
John Riggs, for supplies, pending which, and
before the vessel was seized by the marshal,
John Brayman, of Ohio, filed his intervening
libel for materials furnished. The vessel
was taken possession of by the marshal,
September the 8th, 1855, and according to the
testimony. when she was anchored at a pri-
vate wharf, under the custody of state pro-
cess. The return of the marshal shows that
"he held her in custody." The suit in this
court proceeded to decree of condemnation,
under the usual notice and proclamation. No
claim was interposed, and the vessel was
regularly sold on the 24th of December last.
The respondent claims under a bill of sale
emanating from the sheriff of Wayne county,
the vessel having been sold by him under
process issued by a circuit court commis-
sioner of the state, on the same day with
that of the marshal, who testified that no
one was in possession when he seized; and
that he had not been notified of any seizure
by the sheriff, other than rumor; and that,
subsequently, he and the sheriff agreed to
hold possession together until the contro-
versy in regard to title should be settled by
the court; the admiralty sale being post-
poned until after the sheriff's sale. The prin-
cipal question presented by this state of
facts, disregarding the testimony as to the
actual custody of the vessel by the sheriff
at the time of seizure by the marshal, is,
as to the paramount and exclusive jurisdic-
tion of the courts of the United States in all
admiralty and maritime causes. The pro-
ceedings of the state commissioner cannot

be considered as proceedings in rem. Such
proceedings bind all the world, and as was
recently held by the supreme court of this
state in the case of People v. Hibbard,—"on
the principle of constructive notice to all
the world." But, the Michigan statute, for
the collection of demands against ships,
boats and vessels, and declaring liens there-
on for supplies and materials, makes no equal
provision for the recovery of claims arising
in other states, and postpones the rights of
the foreign creditor to those of its own citi-
zens.

It is certainly not inconsistent with the ju-
dicial power as defined by the constitution
of the United States, for the state to create
a maritime lien, unknown to the general
maritime law, and to provide legal tribunals
and a mode of procedure for the enforce-
ment of such liens, other than proceeding in
rem, which is peculiar to admiralty, and cuts
off all foreign claims, and in its consumma-
tion, confers an indefeasible title in the ven-
dee to the rem, against all the world. Such
a proceeding is international—not municipal.
But, wherein the latter appropriates the rem-
edy in rem, it comes in direct conflict with
the second section of the third article of the
constitution of the United States. For if ju-
risdiction extends to all cases of admiralty
and maritime character, and this proceeding
is of that character, designed to embrace all
the world, the subject, in that respect, is ex-
cluded from state legislation, which has no
power to divest a lien existing in admiralty,
the states having conferred upon the national
government the entire jurisdiction. The pos-
session of the vessel by the sheriff under the
state process, did not divest the lien in ad-
miralty, or affect the process in the hands of
the marshal. The case of Taylor v. The
Royal Saxon [supra], is directly in point.
She had been attached by the process of re-
plevin under the state statutes, a week be-
fore she was libeled in admiralty in the dis-
trict court by a material man. The marshal
made a special return, stating that he found
the sheriff of the county on board, who had
made a previous levy under the state process.
The marshal's return was made the basis
of the further proceedings in admiralty, and
the vessel was sold under the decree of the
United States court, which was affirmed on
appeal; Mr. Justice Grier holding, that the
jurisdiction of the admiralty was exclusive,
as to the proceeding in rem, and that the
title of the marshal's vendee was good
against all the world; that the admiralty lien
adhered to the vessel, from the moment the
debt was contracted; and that the sheriff's
vendee bought the vessel with the full no-
tice of the proceedings instituted for its en-
forcement; and as between him and the mar-
shal's vendee, his title is divested as com-
pletely (in the language of Judge Grier) "as
if he had bought lands on execution, which
were afterwards sold on a mortgage, which
was the oldest lien on the property."

My attention has been called since the argument by the respondent's counsel, to a recent decision in the district of Missouri, with the remark, that the opinion of the court sustained the doctrine, that the sheriff's sale divested the liens of all citizens of the state. Such is not my reading of the opinion of Judge Wells, and if such was the case, the doctrine is not consistent with the character of a maritime lien, which certainly may be acquired by a citizen of the state as well as by a foreigner. Judge Wells expressly held, that the state could pass no law and create no process, which would divest a lien existing in admiralty, and that a sheriff's sale could only divest the owners, and others, residing in the state, of their interest in the boat, on the ground of notice; but, as to foreign creditors who had acquired liens in admiralty, they could in no way be prejudiced by a sheriff's sale. And the same principles have been held in the Eastern district of New York, Judge Betts holding (The Florenzo [Case No. 4,886]) "that the possession of property by a sheriff, under a fi. fa., cannot exclude the marshal from taking possession under the process of the United States court."

The fact in this case, that Riggs, who filed the original libel for supplies, was a citizen of the state, could not of itself possibly affect his lien, and certainly not that of Brayman, the intervening libelant, a citizen of Ohio, acquired antecedent to the service of the state process. It is unnecessary to discuss the subject further, as the point involved, is deemed by the solicitors so important, that no doubt an appeal will be taken to the circuit for further adjudication.

Decree for libelant.

This case was taken by appeal to the circuit court of United States, and the decree of the district court affirmed [Case No. 7,361.]